IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **COREY NOVICK,** | |
| **Plaintiff,** | |
| v. | Case No. 08 C 3733 |
| **ROBIN STAGGERS and VICTOR ROBERSON, ILLINOIS DEPARTMENT OF CHILDREN & FAMILY SERVICES and the OFFICE OF THE GOVERNOR,** | Hon. Harry D. Leinenweber |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Plaintiff's Motion to Alter or Amend the June 19, 2012 Judgment under Federal Rule of Civil Procedure 59(e). Although the Court re-examines portions of its earlier ruling, and reaches a different conclusion in regards to whether a *prima facie* case was established, it ultimately denies the Motion for Reconsideration because qualified immunity still dictates that summary judgment be granted in favor of Defendants.

### I. BACKGROUND

The Court presumes the reader's familiarity with its June 19, 2012 opinion and will not repeat in detail the background recited there. To summarize, Plaintiff Corey Novick ("Novick") was an attorney for the Illinois Department of Children and Family Services ("DCFS"), employed under a four-year contract. Defendant

Robin Staggers ("Staggers") held various positions at DCFS and at least some testimony indicates she had control over DCFS hiring and firing decisions when Novick's position was not renewed at the end of June of 2007. Defendant Victor Roberson ("Roberson") worked in the Office of the Governor ("OG") and testimony indicates he had, at a minimum, the ability to influence hiring at DCFS and whether Plaintiff's employment was renewed.

Plaintiff contends his employment contract was not renewed because he cooperated with FBI agents who approached him while investigating possible hiring improprieties at DCFS. He alleges First Amendment retaliation in violation of 42 U.S.C. § 1983 and violation of Illinois' State Officials and Employees Ethics Act. 5 Ill. Comp. Stat. 430/15-10.

This Court granted summary judgment for Defendants in its June 19, 2012 opinion. Plaintiff seeks reconsideration under Federal Rule of Civil Procedure 59(e).

## II. LEGAL STANDARD

"[R]econsideration is appropriate in limited circumstances, such as where (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law; or (5) there has been a controlling or significant change in the facts." *Citadel Group*

- 2 -

*Ltd. v. Wash. Reg'l Med. Ctr.*, No. 07-1394, 2011 U.S. Dist. LEXIS 50894, at *5 (N.D. Ill. May 12, 2011) (internal citations, quotations and ellipses omitted).

### III. ANALYSIS

#### A. First Amendment Retaliation Claim

##### *1. Evidence of Causation Regarding Events Prior to December 2007*

Because Plaintiff admitted he never told Defendants (or anyone who could have communicated with Defendants) of his speech to the FBI until a December 2007 conversation with Roberson (six months after his contract expired and he left DCFS), the Court ruled there was no evidence of causation to establish a *prima facie* case of First Amendment retaliation. *Novick v. Staggers et al.*, No. 08-3733, 2012 U.S. Dist. LEXIS 84256, at *16 (N.D. Ill. June 19, 2012).

Plaintiff again argues that based on events occurring before that December 2007 conversation, it would be reasonable to infer that Staggers and Roberson believed Novick was cooperating with the FBI. The Court addressed all of these arguments in its prior ruling and Plaintiff advances none of the *Citadel* justifications for reconsideration of this topic. Instead, he merely argues the Court did not view the evidence in its "entirety." Pl.'s Mot. for Recons. 3. Even if correct, this would be an error of reasoning, not of apprehension, and is not grounds for reconsideration.

*Caisse Nationale De Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments.").

### *2. Evidence of Causation Regarding Events during and after December 2007*

Plaintiff's argument concerning the causation evidence around events during and after December 2007 deserves a closer look, however. Essentially, he argues the Court did not apprehend key facts presented in Plaintiff's summary judgment response. Those key facts missed by the Court, Plaintiff contends, were that Plaintiff continued his efforts to be rehired *after* the critical December 2007 conversation between Novick and Roberson (where it is undisputed that Novick told Roberson he had spoken with the FBI). Also, Plaintiff claims, the Court misapprehended that the timing of DCFS' refusal to submit Novick's name for a position created specifically for Novick occurred approximately the same time as the Novick-Roberson FBI conversation.

Unlike merely rehashing old arguments, a contention that there was a misapprehension of fact is a valid reason for reconsideration. *See Citadel, supra.*

Upon re-examination of Plaintiff's response, the Court concludes that there were such facts included in his response to the motions for summary judgment. Although these post-December 2007 facts were not highlighted (evidently because Plaintiff had great faith in his argument that pre-December 2007 events supported

the inference that Defendants knew of Plaintiff's conversations with the FBI), Plaintiff did argue and cite the fact that "The Office of Management and Budget approved the Position [created specifically for Plaintiff] on November 28, 2007." Novick's Resp. to Victor Roberson's . . . Mot. for Summ. J., 4, ECF No. 147. Plaintiff pointed out that after the position was approved, DCFS employee Michelle Smith ("Smith"), sought approval to submit Plaintiff's name to fill that position, but was refused. Pl.'s Resp. to the Office of the Governor's and Victor Roberson's Local Rule 56.1 Statement of Uncontested Facts (the "SOUF"), 16, ¶ 74, ECF No. 148.

While Smith could not remember an exact date when such permission was refused, it would have been after November 28, 2007, and it could be reasonable for a jury to infer that such refusal overlapped or came after the Roberson-Novick December conversation about the FBI.

There was testimony that Roberson and Staggers were close and communicated constantly, and Smith testified that permission to place Novick in the position created for him was denied by either the DCFS Director Erwin McEwen or Defendant Staggers. Defs.' Office of the Governor and Victor Roberson's L.R. 56.1 SOUF, Ex. EE, 57, ECF No. 131-13. Thus, it would not be completely unreasonable for a jury to conclude Roberson and Staggers

communicated about Novick's discussions with the FBI, and that Staggers blocked submission of the name for the position.

Defendants point out that mere knowledge of a plaintiff's protected speech is not enough to demonstrate causation. *See Healy v. City of Chicago*, 450 F.3d 732, 741 (7th Cir. 2006) ("[M]ere knowledge of the plaintiff's protected activity prior to an adverse employment action does not establish a retaliatory motive.").

While that is correct, if a jury were to credit the testimony of DCFS Chief of Labor Relations Tom Putting, that could support a retaliatory inference. To recap, Putting testified that Roberson, in his and Staggers' presence, told Putting that "Corey [Novick] was not renewed because he made a complaint to the OIG [Office of the Inspector General]." This occurred in October 2007. If Roberson and Staggers would not retain Novick at DCFS in retaliation for a complaint to the OIG, a jury might reasonably infer that they would also fail to submit his name to fill the position DCFS director Erwin McEwen had created specifically for Novick, and that they would do so in retaliation for communication with the FBI.

(As an aside, the Court notes that in its initial ruling, it determined that cooperation with the OIG was within Novick's job duties. Additionally, Plaintiff argued it was the retaliation for communication with the FBI that violated the First Amendment; he

- 6 -

did not argue retaliation for the perceived communication with the OIG violated the First Amendment.)

Moreover, Plaintiff correctly points out that his summary judgment response indicated his attempts to be rehired continued in and after his December 2007 conversation with Roberson in which he revealed his FBI discussions. Roberson himself testified that efforts to rehire Novick at other agencies continued after that December 2007 conversation.

Further supporting the case for retaliation is the fact that similarly situated employees were treated differently from Novick. *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006) ("Circumstantial proof, such as the timing of events or the disparate treatment of similar individuals, may be sufficient to establish the defendant's retaliatory motive."). Three other DCFS attorneys did not have their term appointments renewed, yet all of them found continued employment with DCFS or other state agencies.

Sheila Riley was moved to a vacant exempt position until a "double exempt" position was created for her. Debra Dyer, like Novick, was actually let go from DCFS at the end of June 2007. But unlike Novick, DCFS found a way to bring her back a few months later. John Botner's DCFS term (ending January 11, 2008) was not renewed because of performance issues, but he managed to find employment with another state agency. The Court agrees with Defendants that Plaintiff's citations to the record do not

explicitly establish that it was the Office of the Governor or Roberson who arranged or approved of the Botner hire elsewhere, but testimony suggests that Roberson had heavy influence, if not control, of hiring at the other state agencies.

Plaintiff also produced testimony that DCFS hired a number of attorneys in 2007 and 2008 and Plaintiff was not considered for those positions. This creates a factual issue as to whether Roberson (who Novick alleges promised to have him re-employed by Christmas 2007) changed his mind upon discovering Novick's communications with the FBI. It also creates an issue of material fact as to whether Staggers retaliated for the FBI speech by blocking the submission of Novick's name for the position that had already been created and approved by the governor's office. Thus, in light of apprehension of the previously unemphasized facts regarding the timing of the refusal to submit Novick's name for his tailor-made position in proximity to his conversation with Roberson, and in apprehension of the previously unemphasized facts regarding Novick's continued efforts to regain employment after the conversation with Roberson, the Court reconsiders and finds that a *prima facie* case of First Amendment retaliation exits.

The Court acknowledges that the issue of causation is a close one, but given the Seventh Circuit's admonition that direct evidence of unlawful retaliation is rarely present (*Massey*, 457 F.3d at 717), the Court finds enough circumstantial evidence that

could support a reasonable jury's finding that, once Roberson learned of the communication with the FBI, he and Staggers decided not to rehire Novick, at least in part, in retaliation for cooperation with the FBI.

The Court notes that because there is evidence Defendants did not renew Plaintiff's employment because of the OIG investigation, Plaintiff might be hard-pressed at trial to prove that the retaliation for the FBI cooperation was the "but-for" reason for not rehiring him. However, the Seventh Circuit has made clear that "but-for" is the criteria to be used at trial, *not* for summary judgment. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). At summary judgment, the burden of proof is split between the parties. *Id.* A plaintiff must produce evidence that his speech was at least a motivating factor. *Id.*

Defendants claim that a *bona fide* reason for not renewing Plaintiff's term exists – that the Governor's Office was trying to reduce term appointments. This may be true, but given that similarly situated employees whose terms were not renewed were otherwise re-employed, it creates an issue of material fact as to whether that reason was a pretext for not rehiring Plaintiff.

### B. Qualified Immunity

The Court does not find much new ground trod by Plaintiff in his Motion in regards to the Court's finding on qualified immunity. Plaintiff contends that the Court reached its decision on bases

Defendants had not raised, and objects that he had "not previously addressed these issues." Novick's Mot. to Amend, 11, ECF No. 171. The Court is not convinced this qualifies as making an adversarial ruling outside the issues presented by the parties, as Defendants undeniably did discuss qualified immunity in their motions for summary judgment. But on the argument that the Defendants qualified immunity briefing focused on different bases than those upon which the Court decided, this Court will give Plaintiff the benefit of the doubt and re-examine the issue.

Analysis of qualified immunity involves two questions: (1) whether a constitutional right was violated using plaintiff's version of the facts, and (2) whether that right was clearly established at the time. *Surita v. Hyde*, 665 F.3d 860, 868 (7th Cir. 2011).

The Court ruled for Plaintiff on the first element, but found that at the time the alleged retaliation was occurring in this case, it was far from clear that it was clearly established that a government employer was prohibited from failing to rehire an employee (particularly an attorney) who cooperated with the FBI. The Court made this ruling mindful of the landscape that existed in 2007, when Plaintiff was not rehired. The landmark case of *Garcetti v. Ceballos* had been decided a short time before, on May 30, 2006. *Garcetti v. Ceballos*, 547 U.S. 410. That landmark case changed the analysis of when a public employer could restrict

an employee's speech. *Id*. at 421-422 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.").

However, as the Seventh Circuit itself noted on July 17, 2007, a few weeks after Plaintiff was not rehired, *Garcetti* had not given the Supreme Court an "occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Morales v. Jones*, 494 F.3d 590, 596.

The Court reasoned that, as late as 2008, the Seventh Circuit had not enunciated a clear endorsement of cooperation with the FBI as speech unconnected to one's employment duties. *Trigillo v. Snyder*, 547 F.3d 826 (7th Cir. 2008). Indeed, although the Seventh Circuit in *Trigillo* found that a Department of Corrections employee's report to the Illinois Attorney General (recounting possible irregularities) was part of her job duties of overseeing procurement activities (*Id.* at 830). It pointedly left alone the question of whether a report about possible bid rigging to the FBI was part of her duties. *Id.* ("[W]e need not get into that because her retaliation claim based on the report to the FBI fails for a more basic reason . . . ").

The Court further notes that, shortly after *Garcetti*, this uncertainty about the contours of official duties was demonstrated in a vigorously disputed, split-decision Seventh Circuit case somewhat analogous to this one. *See Morales*, 494 F.3d at 598 (ruling that a police officer's report to a district attorney of suspicions of criminal corruption by the police chief was connected to his job duties, even when he had not been assigned to investigate such corruption). The Court also notes that, while *Garcetti* ruled statements and reports a district attorney made to his superiors regarding falsified affidavits was part of his job (*Garcetti*, 547 U.S. at 422), it left vague whether Ceballos' court testimony when called by the defense was pursuant to his job duties as well. This might very well suggest that an attorney testifying truthfully, outside the chain of command, could still qualify as a job-related duty.

Plaintiff in this case was hired as an attorney, a position that comes with ethical obligations to tell the truth and uphold the law. In the uncertainty following *Garcetti*, a defendant might very well have concluded that Novick's speech to the FBI was like the courtroom testimony in *Garcetti*, and likely unprotected. Indeed, Defendants did argue in this case that Novick's speech to the FBI was part of his job duties. That this Court concluded in June 2012 (based on the 2011 Tenth Circuit Case of *Trant v. Oklahoma,* 426 Fed.Appx. 653, 660) that Plaintiff's communication

- 12 -

with the FBI was not part of Novick's duties does not mean that such a conclusion was clear in 2007.

Plaintiff cites a plethora of cases in arguing that the right was clearly established at that time, but all are either pre-*Garcetti* cases, cases decided after Roberson and Staggers acted (*e.g.*, *Fulk v. Village of Sandoval*, No. 08-843-GPM, 2009 U.S. Dist. LEXIS 102606 (S.D. Ill. Nov. 3, 2009) or out-of-District cases that would not necessarily clearly establish a constitutional violation in this District.

The Motion to Reconsider this aspect of the ruling is denied.

### C.  State Officials and Employees Ethics Act

Plaintiff also urges reconsideration of the Court's conclusion that he waived any objection to Plaintiff's argument that the conduct in this case did not fit within the statutory definition of retaliatory action prohibited by the State Officials and Employee Ethics Act.  5 ILL. STAT. COMP. 430/15-10.  Specifically, Defendants contended in their motions for summary judgment that not rehiring an employee after a four-year term expires does not constitute "the reprimand, discharge, suspension, demotion, denial of promotion or transfer, or change in the terms or conditions of employment" of a state employee.  *Id*. at 430/15-5.

Plaintiff now contends it does, specifically that it falls within the "denial of . . . transfer" rubric.  This is a fine argument, and one the Plaintiff had the opportunity to make at

summary judgment. He failed to do so. Reconsideration is not an appropriate forum for arguing matters that could have been heard during the pendency of the previous motion. *Bally Export Corp. v. Balicar Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986).

The Motion to Reconsider is denied, as is the alternative Motion to Remand the state law claim.

### IV. CONCLUSION

Although the Court reaches a different conclusion on whether a *prima facie* case of retaliation was demonstrated, the Plaintiff's Motion to Reconsider Summary Judgment is denied.

**IT IS SO ORDERED.**

          Harry D. Leinenweber, Judge
          United States District Court

**DATE:** 12/20/2012

- 14 -